# United States District Court
# Central District of California
# Western Division

| | |
|---|---|
| KRISTEN BIEL,<br><br>                    Plaintiff,<br><br>        v.<br><br>ST. JAMES SCHOOL,<br><br>                    Defendant. | CV 15-04248 TJH (ASx)<br><br><br>Amended<br>Order and Judgment |

The Court has considered the St. James School's ["St. James"] motion for summary judgment, together with the moving and opposing papers.

This motion concerns whether Plaintiff Kristen Biel was a "minister" within the meaning of the "ministerial exception" to Title VII of the Civil Rights Act of 1964 , 42 U.S.C. § 2000e, *et seq.*, ["Title VII"] and is, therefore, barred from bringing the instant action under the Americans with Disabilities Act,  42 U.S.C. § 12101, *et seq* ["ADA"].

St. James hired Biel in 2013 as a first grade substitute teacher.  In June, 2013, Sister Mary Margaret, St. James's principal, hired Biel as a full-time fifth grade teacher — with the title of "teacher" — for the 2013–14 school year.  Upon accepting the position, Biel signed an employment contract stating that St. James's mission is "to develop and promote a Catholic school faith community within the philosophy of Catholic education as implemented at St. James, and the doctrines, laws, and norms of the Catholic Church."  Further, Biel agreed to perform "[a]ll duties and responsibilities . . . within St. James's overriding commitment to developing its faith."  Under her employment contract, Biel was required to "model, teach, and promote behavior in conformity to the teaching of the Roman Catholic Church."

In addition to teaching secular subjects, Biel taught a thirty-minute religion class to her students four days per week, and was required to dedicate a minimum of 200 minutes every week to the subject of religion.  The religion course was grounded upon the norms and doctrines of the Catholic Faith, including the sacraments of the Catholic Church, social teachings according to the Catholic Church, and the overall Catholic way of life.  For instance, Biel taught her students the significance of the Lent season, the Last Supper, Easter, the Eucharist, and Reconciliation.  As a teaching guide for the religion course, Biel used a Catholic textbook, entitled "Coming to God's Life," from which Biel gave her students weekly tests.  Further, Biel was required to pray with her students, and did so twice a day.  Biel, also, incorporated the Catholic faith into the secular curriculum she taught.  During her tenure at St. James, Biel attended a four-to-five hour conference regarding ways to better incorporate God into lessons at the Los Angeles Religious Education Congress.

In April, 2014, Biel was diagnosed with cancer and informed Sister Mary Margaret.  In June, 2014, Sister Mary Margaret informed Biel that St. James would not be renewing her contract for the 2014–2015 school year.  In June, 2015, Biel filed this suit alleging six claims under the ADA.  St. James, now, moves for summary judgment as to all six claims.

**Discussion**

In a motion for summary judgment, when the moving party has the burden of proof at trial, as St. James has here on its affirmative defense, the moving party has the initial burden of establishing a *prima facie* case. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If St. James satisfies its burden, the burden will shift to Biel to introduce evidence sufficient to raise a triable issue. *See Celotex Corp.*, 477 U.S. at 323. Each fact relied upon in this Order is undisputed.

St. James argued that Biel's claims — all brought under the ADA, and, consequently, Title VII — are barred under the ministerial exception. The ministerial exception bars Title VII claims where the employer is a religious institution and the employee is a "minister*." See Hosanna-Tabor Evangelical Lutheran Church & Sch. v. E.E.O.C.*, 132 S. Ct. 694, 704 (2012) ["*Hosanna-Tabor*"]. The ministerial exception is an exception to Title VII "grounded in the First Amendment, that precludes application of such legislation to claims concerning the employment relationship between a religious institution and its ministers." *Hosanna-Tabor*, 132 S. Ct. at 705 (footnote omitted). The ministerial exception "is intended to protect the relationship between a religious organization and its clergy from constitutionally impermissible interference by the government." *Werft v. Desert Sw. Annual Conference of United Methodist Church*, 377 F.3d 1099, 1101 (9th Cir. 2004) (footnote and internal quotations omitted).

Here, there is no dispute that St. James, as a Catholic school, is a religious institution. Accordingly, the application of the ministerial exception turns on whether Biel was a "minister." *See Hosanna-Tabor*, 132 S. Ct. at 705.

Whether Biel is a minister depends on all the circumstances of Biel's employment, including her education before and during her tenure, her title, and her job duties. *See Hosanna-Tabor*, 132 S. Ct. at 707. "The paradigmatic application of the ministerial exception is to the employment of an ordained minister . . . [b]ut the

ministerial exception encompasses more than a church's ordained ministers." *Alcazar v. Corporation of the Catholic Archbishop of Seattle*, 627 F.3d 1288, 1291 (2010). The ministerial exception may apply "notwithstanding the assignment of some secular responsibilities." *Alcazar*, 627 F.3d at 1293.

In *Hosanna-Tabor*, the teacher at a religious school taught a forty-five minute religion class four days a week in addition to teaching math, language arts, social studies, science, gym, art, and music. *Hosanna-Tabor*, 132 S. Ct. at 700, 709. The teacher, also, led the students in prayer and devotional exercises each day, and attended a weekly school-wide chapel service, which she led about twice a year. *Hosanna-Tabor*, 132 S. Ct. at 700. Additionally, the teacher held the title of "called teacher," a reference to teachers at the school who had satisfied certain academic and other requirements, and were deemed by the school to have "been called to their vocation by God through a congregation." *Hosanna-Tabor*, 132 S. Ct. at 700. After taking disability leave, and subsequently losing her position at the school, the teacher sued the school under the ADA. *Hosanna-Tabor*, 132 S. Ct. at 700–01. Upon appeal to the Supreme Court, the Court held that the circumstances of the teacher's job — particularly the teacher's title, the teacher's efforts to hold herself out as a minister, and the teacher's job duties — established that the teacher was a "minister" within the meaning of the ministerial exception. *Hosanna-Tabor*, 132 S. Ct. at 707–10. In so holding, the Court expressly rejected the notion that the teacher was not a minister because "her religious duties consumed only 45 minutes of each workday, and that the rest of her day was devoted to teaching secular subjects." *Hosanna-Tabor*, 132 S. Ct. at 709.

Here, St. James has established a *prima facie* case that Biel was a minister because her employment contract and job duties demonstrate that her "job duties reflected a role in conveying the Catholic Church's message and carrying out its mission." *See Hosanna-Tabor*, 132 S. Ct. at 708. Just as the plaintiff in *Hosanna-Tabor* taught religion and prayed with her students, Biel conveyed the Catholic

Church's message by teaching religion to her students four times each week for thirty minutes, by administering and evaluating weekly tests from a Catholic textbook, "Coming to God's Life," and by praying with the students twice each day. *See Hosanna-Tabor*, 132 S. Ct. at 700, 708. Further, Biel clearly sought to carry out St. James's Catholic mission by, for example, including Catholic teachings into all of her lessons and attending a conference to learn techniques for incorporating religious teachings into her lessons.

Although this case does not contain all of the hallmarks of ministry identified in *Hosanna-Tabor*, it is clear that *Hosanna-Tabor* was not intended to represent the outer limits of the ministerial exception. *See Hosanna-Tabor*, 132 S. Ct. at 707. Instead, the question is whether the claims at issue may interfere with St. James's ability to choose who will convey its message. *See Bollard v. California Province of the Soc'y of Jesus*, 196 F.3d 940, 946 (9th Cir. 1999). For the reasons discussed above, St. James has established a *prima facie* case that Biel acted as a messenger of St. James' faith. *See Hosanna-Tabor*, 132 S. Ct. at 708. Therefore, St. James established a *prima facie* case Biel was a minister withing the meaning of the ministerial exception.

Further, because all facts relied upon in this Order are undisputed by the parties, Biel did not raise a triable issue of fact that would bar the granting of summary judgment. *See Celotex Corp.*, 477 U.S. at 323.

Therefore,

It is Ordered that the motion for summary judgment be, and hereby is, Granted.

It is Further Ordered, Adjudged, and Decreed that judgment be, and hereby is, Entered in favor of Defendant St. James School and against Plaintiff Kristen Biel.

It is Further Ordered, Adjudged, and Decreed that Plaintiff Kristen Biel shall take nothing and that all parties shall bear their own costs.

Date: January 24, 2017

Terry J. Hatter, Jr.
Senior United States District Judge