Name __Joseph Lovretovich, Esq; Andrew Pletcher, Esq.; Cathryn Fur__
Address __JML Law, APLC, 21052 Oxnard Street__
City, State, Zip __Woodland Hills, CA 91367__
Phone __818-610-8800__
Fax __818-610-3030__
E-Mail __Andrew@jmllaw.com; Cathryn@jmllaw.com__

☐ FPD   ☐ Appointed   ☐ CJA   ☐ Pro Per   ☒ Retained

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KRISTEN BIEL,<br>an individual,<br>                                   PLAINTIFF(S),<br>                    v.<br>ST. JAMES SCHOOL, A CORP,<br>a California corporation<br>                                   DEFENDANT(S). | CASE NUMBER:<br><br>2:15-cv-04248 TJH (ASX)<br><br>NOTICE OF APPEAL |

NOTICE IS HEREBY GIVEN that _____Plaintiff, KRISTEN BIEL_____ hereby appeals to
                                                  *Name of Appellant*
the United States Court of Appeals for the Ninth Circuit from:

**Criminal Matter**

☐ Conviction only [F.R.Cr.P. 32(j)(1)(A)]
☐ Conviction and Sentence
☐ Sentence Only (18 U.S.C. 3742)
☐ Pursuant to F.R.Cr.P. 32(j)(2)
☐ Interlocutory Appeals
☐ Sentence imposed:

☐ Bail status:

**Civil Matter**

☒ Order (specify):
   Order Granting Motion for Summary
   Judgment [Docket No. 96]

☒ Judgment (specify):
   Amended Order and Judgment re Order on
   MSJ [Docket No. 98]

☐ Other (specify):

Imposed or Filed on _____01/24/2017_____. Entered on the docket in this action on __01/24/2017__.

A copy of said judgment or order is attached hereto.

February 10, 2017
Date

Signature
☐ Appellant/ProSe   ☒ Counsel for Appellant   ☐ Deputy Clerk

Note:   The Notice of Appeal shall contain the names of all parties to the judgment or order and the names and addresses of the attorneys for each party. Also, if not electronically filed in a criminal case, the Clerk shall be furnished a sufficient number of copies of the Notice of Appeal to permit prompt compliance with the service requirements of FRAP 3(d).

# 𝕌𝕟𝕚𝕥𝕖𝕕 𝕊𝕥𝕒𝕥𝕖𝕤 𝔻𝕚𝕤𝕥𝕣𝕚𝕔𝕥 ℂ𝕠𝕦𝕣𝕥
# ℂ𝕖𝕟𝕥𝕣𝕒𝕝 𝔻𝕚𝕤𝕥𝕣𝕚𝕔𝕥 𝕠𝕗 ℂ𝕒𝕝𝕚𝕗𝕠𝕣𝕟𝕚𝕒
# 𝕎𝕖𝕤𝕥𝕖𝕣𝕟 𝔻𝕚𝕧𝕚𝕤𝕚𝕠𝕟

| | |
|---|---|
| KRISTEN BIEL,<br><br>        Plaintiff,<br><br>    v.<br><br>ST. JAMES SCHOOL,<br><br>        Defendant. | CV 15-04248 TJH (ASx)<br><br>*Order and Judgment*<br><br>JS-6 |

The Court has considered the St. James School's ["St. James"] motion for summary judgment, together with the moving and opposing papers.

This motion concerns whether Plaintiff Kristen Biel was a "minister" within the meaning of the "ministerial exception" to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, ["Title VII"] and is, therefore, barred from bringing the instant action under the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq* ["ADA"].

St. James hired Biel in 2013 as a first grade substitute teacher. In June, 2013, Sister Mary Margaret, St. James's principal, hired Biel as a full-time fifth grade teacher — with the title of "teacher" — for the 2013–14 school year. Upon accepting the position, Biel signed an employment contract stating that St. James's mission is "to develop and promote a Catholic school faith community within the philosophy of

1  Catholic education as implemented at St. James, and the doctrines, laws, and norms of
2  the Catholic Church." Further, Biel agreed to perform "[a]ll duties and responsibilities
3  . . . within St. James's overriding commitment to developing its faith." Under her
4  employment contract, Biel was required to "model, teach, and promote behavior in
5  conformity to the teaching of the Roman Catholic Church."
6      In addition to teaching secular subjects, Biel taught a thirty-minute religion class
7  to her students four days per week, and was required to dedicate a minimum of 200
8  minutes every week to the subject of religion. The religion course was grounded upon
9  the norms and doctrines of the Catholic Faith, including the sacraments of the Catholic
10 Church, social teachings according to the Catholic Church, and the overall Catholic way
11 of life. For instance, Biel taught her students the significance of the Lent season, the
12 Last Supper, Easter, the Eucharist, and Reconciliation. As a teaching guide for the
13 religion course, Biel used a Catholic textbook, entitled "Coming to God's Life," from
14 which Biel gave her students weekly tests. Further, Biel was required to pray with her
15 students, and did so twice a day. Biel, also, incorporated the Catholic faith into the
16 secular curriculum she taught. During her tenure at St. James, Biel attended a four-to-
17 five hour conference regarding ways to better incorporate God into lessons at the Los
18 Angeles Religious Education Congress.
19     In April, 2014, Biel was diagnosed with cancer and informed Sister Mary
20 Margaret. In June, 2014, Sister Mary Margaret informed Biel that St. James would not
21 be renewing her contract for the 2014–2015 school year. In June, 2015, Biel filed this
22 suit alleging six claims under the ADA. St. James, now, moves for summary judgment
23 as to all six claims.
24
25 **Discussion**
26     In a motion for summary judgment, when the moving party has the burden of
27 proof at trial, as St. James has here on its affirmative defense, the moving party has the
28 initial burden of establishing a *prima facie* case. *See Celotex Corp. v. Catrett*, 477 U.S.

317, 323 (1986). If St. James satisfies its burden, the burden will shift to Biel to introduce evidence sufficient to raise a triable issue. *See Celotex Corp.*, 477 U.S. at 323. Each fact relied upon in this Order is undisputed.

St. James argued that Biel's claims — all brought under the ADA, and, consequently, Title VII — are barred under the ministerial exception. The ministerial exception bars Title VII claims where the employer is a religious institution and the employee is a "minister." *See Hosanna-Tabor Evangelical Lutheran Church & Sch. v. E.E.O.C.*, 132 S. Ct. 694, 704 (2012) ["*Hosanna-Tabor*"]. The ministerial exception is an exception to Title VII "grounded in the First Amendment, that precludes application of such legislation to claims concerning the employment relationship between a religious institution and its ministers." *Hosanna-Tabor*, 132 S. Ct. at 705 (footnote omitted). The ministerial exception "is intended to protect the relationship between a religious organization and its clergy from constitutionally impermissible interference by the government." *Werft v. Desert Sw. Annual Conference of United Methodist Church*, 377 F.3d 1099, 1101 (9th Cir. 2004) (footnote and internal quotations omitted).

Here, there is no dispute that St. James, as a Catholic school, is a religious institution. Accordingly, the application of the ministerial exception turns on whether Biel was a "minister." *See Hosanna-Tabor*, 132 S. Ct. at 705.

Whether Biel is a minister depends on all the circumstances of Biel's employment, including her education before and during her tenure, her title, and her job duties. *See Hosanna-Tabor*, 132 S. Ct. at 707. "The paradigmatic application of the ministerial exception is to the employment of an ordained minister . . . [b]ut the ministerial exception encompasses more than a church's ordained ministers." *Alcazar v. Corporation of the Catholic Archbishop of Seattle*, 627 F.3d 1288, 1291 (2010). The ministerial exception may apply "notwithstanding the assignment of some secular responsibilities." *Alcazar*, 627 F.3d at 1293.

In *Hosanna-Tabor*, the teacher at a religious school taught a forty-five minute

1 religion class four days a week in addition to teaching math, language arts, social
2 studies, science, gym, art, and music. *Hosanna-Tabor*, 132 S. Ct. at 700, 709. The
3 teacher, also, led the students in prayer and devotional exercises each day, and attended
4 a weekly school-wide chapel service, which she led about twice a year.
5 *Hosanna-Tabor*, 132 S. Ct. at 700. Additionally, the teacher held the title of "called
6 teacher," a reference to teachers at the school who had satisfied certain academic and
7 other requirements, and were deemed by the school to have "been called to their
8 vocation by God through a congregation." *Hosanna-Tabor*, 132 S. Ct. at 700. After
9 taking disability leave, and subsequently losing her position at the school, the teacher
10 sued the school under the ADA. *Hosanna-Tabor*, 132 S. Ct. at 700–01. Upon appeal
11 to the Supreme Court, the Court held that the circumstances of the teacher's job —
12 particularly the teacher's title, the teacher's efforts to hold herself out as a minister, and
13 the teacher's job duties — established that the teacher was a "minister" within the
14 meaning of the ministerial exception. *Hosanna-Tabor*, 132 S. Ct. at 707–10. In so
15 holding, the Court expressly rejected the notion that the teacher was not a minister
16 because "her religious duties consumed only 45 minutes of each workday, and that the
17 rest of her day was devoted to teaching secular subjects." *Hosanna-Tabor*, 132 S. Ct.
18 at 709.
19       Here, St. James has established a *prima facie* case that Biel was a minister
20 because her employment contract and job duties demonstrate that her "job duties
21 reflected a role in conveying the Catholic Church's message and carrying out its
22 mission." *See Hosanna-Tabor*, 132 S. Ct. at 708. Just as the plaintiff in
23 *Hosanna-Tabor* taught religion and prayed with her students, Biel conveyed the Catholic
24 Church's message by teaching religion to her students four times each week for thirty
25 minutes, by administering and evaluating weekly tests from a Catholic textbook,
26 "Coming to God's Life," and by praying with the students twice each day. *See*
27 *Hosanna-Tabor*, 132 S. Ct. at 700, 708. Further, Biel clearly sought to carry out St.
28 James's Catholic mission by, for example, including Catholic teachings into all of her

lessons and attending a conference to learn techniques for incorporating religious teachings into her lessons.

Although this case does not contain all of the hallmarks of ministry identified in *Hosanna-Tabor*, it is clear that *Hosanna-Tabor* was not intended to represent the outer limits of the ministerial exception. *See Hosanna-Tabor*, 132 S. Ct. at 707. Instead, the question is whether the claims at issue may interfere with St. James's ability to choose who will convey its message. *See Bollard v. California Province of the Soc'y of Jesus*, 196 F.3d 940, 946 (9th Cir. 1999). For the reasons discussed above, St. James has established a *prima facie* case that Biel acted as a messenger of St. James' faith. *See Hosanna-Tabor*, 132 S. Ct. at 708. Therefore, St. James established a *prima facie* case Biel was a minister withing the meaning of the ministerial exception.

Further, because all facts relied upon in this Order are undisputed by the parties, Biel did not raise a triable issue of fact that would bar the granting of summary judgment. *See Celotex Corp.*, 477 U.S. at 323.

Therefore,

𝔍𝔱 𝔦𝔰 𝔒𝔯𝔡𝔢𝔯𝔢𝔡 that the motion for summary judgment be, and hereby is, 𝔊𝔯𝔞𝔫𝔱𝔢𝔡.

Date: January 17, 2017

*Terry J. Hatter, Jr.*
𝔗𝔢𝔯𝔯𝔶 𝔍. 𝔥𝔞𝔱𝔱𝔢𝔯, 𝔍𝔯.
𝔖𝔢𝔫𝔦𝔬𝔯 𝔘𝔫𝔦𝔱𝔢𝔡 𝔖𝔱𝔞𝔱𝔢𝔰 𝔇𝔦𝔰𝔱𝔯𝔦𝔠𝔱 𝔍𝔲𝔡𝔤𝔢

# United States District Court
# Central District of California
# Western Division

| | |
|---|---|
| KRISTEN BIEL, | CV 15-04248 TJH (ASx) |
| Plaintiff, | |
| v. | |
| ST. JAMES SCHOOL, | Amended Order and Judgment |
| Defendant. | |

    The Court has considered the St. James School's ["St. James"] motion for summary judgment, together with the moving and opposing papers.

    This motion concerns whether Plaintiff Kristen Biel was a "minister" within the meaning of the "ministerial exception" to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, ["Title VII"] and is, therefore, barred from bringing the instant action under the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq* ["ADA"].

St. James hired Biel in 2013 as a first grade substitute teacher. In June, 2013, Sister Mary Margaret, St. James's principal, hired Biel as a full-time fifth grade teacher — with the title of "teacher" — for the 2013-14 school year. Upon accepting the position, Biel signed an employment contract stating that St. James's mission is "to develop and promote a Catholic school faith community within the philosophy of Catholic education as implemented at St. James, and the doctrines, laws, and norms of the Catholic Church." Further, Biel agreed to perform "[a]ll duties and responsibilities . . . within St. James's overriding commitment to developing its faith." Under her employment contract, Biel was required to "model, teach, and promote behavior in conformity to the teaching of the Roman Catholic Church."

In addition to teaching secular subjects, Biel taught a thirty-minute religion class to her students four days per week, and was required to dedicate a minimum of 200 minutes every week to the subject of religion. The religion course was grounded upon the norms and doctrines of the Catholic Faith, including the sacraments of the Catholic Church, social teachings according to the Catholic Church, and the overall Catholic way of life. For instance, Biel taught her students the significance of the Lent season, the Last Supper, Easter, the Eucharist, and Reconciliation. As a teaching guide for the religion course, Biel used a Catholic textbook, entitled "Coming to God's Life," from which Biel gave her students weekly tests. Further, Biel was required to pray with her students, and did so twice a day. Biel, also, incorporated the Catholic faith into the secular curriculum she taught. During her tenure at St. James, Biel attended a four-to-five hour conference regarding ways to better incorporate God into lessons at the Los Angeles Religious Education Congress.

In April, 2014, Biel was diagnosed with cancer and informed Sister Mary Margaret. In June, 2014, Sister Mary Margaret informed Biel that St. James would not be renewing her contract for the 2014-2015 school year. In June, 2015, Biel filed this suit alleging six claims under the ADA. St. James, now, moves for summary judgment as to all six claims.

## Discussion

In a motion for summary judgment, when the moving party has the burden of proof at trial, as St. James has here on its affirmative defense, the moving party has the initial burden of establishing a *prima facie* case. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If St. James satisfies its burden, the burden will shift to Biel to introduce evidence sufficient to raise a triable issue. *See Celotex Corp.*, 477 U.S. at 323. Each fact relied upon in this Order is undisputed.

St. James argued that Biel's claims — all brought under the ADA, and, consequently, Title VII — are barred under the ministerial exception. The ministerial exception bars Title VII claims where the employer is a religious institution and the employee is a "minister." *See Hosanna-Tabor Evangelical Lutheran Church & Sch. v. E.E.O.C.*, 132 S. Ct. 694, 704 (2012) ["*Hosanna-Tabor*"]. The ministerial exception is an exception to Title VII "grounded in the First Amendment, that precludes application of such legislation to claims concerning the employment relationship between a religious institution and its ministers." *Hosanna-Tabor*, 132 S. Ct. at 705 (footnote omitted). The ministerial exception "is intended to protect the relationship between a religious organization and its clergy from constitutionally impermissible interference by the government." *Werft v. Desert Sw. Annual Conference of United Methodist Church*, 377 F.3d 1099, 1101 (9th Cir. 2004) (footnote and internal quotations omitted).

Here, there is no dispute that St. James, as a Catholic school, is a religious institution. Accordingly, the application of the ministerial exception turns on whether Biel was a "minister." *See Hosanna-Tabor*, 132 S. Ct. at 705.

Whether Biel is a minister depends on all the circumstances of Biel's employment, including her education before and during her tenure, her title, and her job duties. *See Hosanna-Tabor*, 132 S. Ct. at 707. "The paradigmatic application of the ministerial exception is to the employment of an ordained minister . . . [b]ut the

ministerial exception encompasses more than a church's ordained ministers." *Alcazar v. Corporation of the Catholic Archbishop of Seattle*, 627 F.3d 1288, 1291 (2010). The ministerial exception may apply "notwithstanding the assignment of some secular responsibilities." *Alcazar*, 627 F.3d at 1293.

In *Hosanna-Tabor*, the teacher at a religious school taught a forty-five minute religion class four days a week in addition to teaching math, language arts, social studies, science, gym, art, and music. *Hosanna-Tabor*, 132 S. Ct. at 700, 709. The teacher, also, led the students in prayer and devotional exercises each day, and attended a weekly school-wide chapel service, which she led about twice a year. *Hosanna-Tabor*, 132 S. Ct. at 700. Additionally, the teacher held the title of "called teacher," a reference to teachers at the school who had satisfied certain academic and other requirements, and were deemed by the school to have "been called to their vocation by God through a congregation." *Hosanna-Tabor*, 132 S. Ct. at 700. After taking disability leave, and subsequently losing her position at the school, the teacher sued the school under the ADA. *Hosanna-Tabor*, 132 S. Ct. at 700–01. Upon appeal to the Supreme Court, the Court held that the circumstances of the teacher's job — particularly the teacher's title, the teacher's efforts to hold herself out as a minister, and the teacher's job duties — established that the teacher was a "minister" within the meaning of the ministerial exception. *Hosanna-Tabor*, 132 S. Ct. at 707–10. In so holding, the Court expressly rejected the notion that the teacher was not a minister because "her religious duties consumed only 45 minutes of each workday, and that the rest of her day was devoted to teaching secular subjects." *Hosanna-Tabor*, 132 S. Ct. at 709.

Here, St. James has established a *prima facie* case that Biel was a minister because her employment contract and job duties demonstrate that her "job duties reflected a role in conveying the Catholic Church's message and carrying out its mission." See *Hosanna-Tabor*, 132 S. Ct. at 708. Just as the plaintiff in *Hosanna-Tabor* taught religion and prayed with her students, Biel conveyed the Catholic

Church's message by teaching religion to her students four times each week for thirty minutes, by administering and evaluating weekly tests from a Catholic textbook, "Coming to God's Life," and by praying with the students twice each day. *See Hosanna-Tabor*, 132 S. Ct. at 700, 708. Further, Biel clearly sought to carry out St. James's Catholic mission by, for example, including Catholic teachings into all of her lessons and attending a conference to learn techniques for incorporating religious teachings into her lessons.

Although this case does not contain all of the hallmarks of ministry identified in *Hosanna-Tabor*, it is clear that *Hosanna-Tabor* was not intended to represent the outer limits of the ministerial exception. *See Hosanna-Tabor*, 132 S. Ct. at 707. Instead, the question is whether the claims at issue may interfere with St. James's ability to choose who will convey its message. *See Bollard v. California Province of the Soc'y of Jesus*, 196 F.3d 940, 946 (9th Cir. 1999). For the reasons discussed above, St. James has established a *prima facie* case that Biel acted as a messenger of St. James' faith. *See Hosanna-Tabor*, 132 S. Ct. at 708. Therefore, St. James established a *prima facie* case Biel was a minister withing the meaning of the ministerial exception.

Further, because all facts relied upon in this Order are undisputed by the parties, Biel did not raise a triable issue of fact that would bar the granting of summary judgment. *See Celotex Corp.*, 477 U.S. at 323.

Therefore,

𝕴𝖙 𝖎𝖘 𝕺𝖗𝖉𝖊𝖗𝖊𝖉 that the motion for summary judgment be, and hereby is, 𝕲𝖗𝖆𝖓𝖙𝖊𝖉.

𝕴𝖙 𝖎𝖘 𝖋𝖚𝖗𝖙𝖍𝖊𝖗 𝕺𝖗𝖉𝖊𝖗𝖊𝖉, 𝕬𝖉𝖏𝖚𝖉𝖌𝖊𝖉, 𝖆𝖓𝖉 𝕯𝖊𝖈𝖗𝖊𝖊𝖉 that judgment be, and hereby is, 𝕰𝖓𝖙𝖊𝖗𝖊𝖉 in favor of Defendant St. James School and against Plaintiff Kristen Biel.

1        **It is Further Ordered, Adjudged, and Decreed** that Plaintiff Kristen Biel
2  shall take nothing and that all parties shall bear their own costs.
3
4  Date: January 24, 2017
5
6                                            **Terry J. Hatter, Jr.**
7                                  **Senior United States District Judge**

# PROOF OF SERVICE
UNITED STATES DISCTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My business address is 21052 Oxnard Street, Woodland Hills, CA 91367.

On February 10, 2017, I caused service of **PLAINTIFF'S NOTICE OF APPEAL** on the following party in this action by <u>electronically filing</u> the foregoing with the Clerk of the U.S. District Court using its CM/ECF System, which electronically notifies them.

Daniel R. Sullivan, Esq.
Brian L. Williams, Esq.
SULLIVAN, BALLOG & WILLIAMS, LLP
400 North Tustin Avenue, Suite 120
Santa Ana, California 92705
Telephone: (714) 541-2121
Facsimile: (714) 541-2120
Emails: drs@sullivanballog.com; blw@sullivanballog.com
    Attorneys for: Defendant, ST. JAMES SCHOOL, A CORP.

☒ (Federal) I declare under penalty of perjury that the foregoing is true and correct and that I am employed in the office of a member of the Bar of this Court, at whose direction the service was made.

Executed on February 10, 2017 at Woodland Hills, California.

_____
Tad Kuchar

JML LAW
A Professional Law Corporation
21052 Oxnard Street
Woodland Hills, CA 91367
(818) 610-8800

**PROOF OF SERVICE FOR NOTICE OF APPEAL**